IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JACQUELINE S. ROBINSON
    Plaintiff,
v.                                                                        Civil Action File No. _____

BANK OF AMERICA N. A. d/b/a
BANK OF AMERICA HOME LOANS,
THE NEWPORT AGENCY, & FIDELITY
NATIONAL PROPERTY & CASUALTY
INSURANCE COMPANY,
    Defendants.

## NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, comes Defendant, Fidelity National Property & Casualty Insurance Company (hereinafter "Fidelity"). Fidelity is a Write-Your-Own ("WYO") Program carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,1 and appears herein in its "fiduciary"2 capacity as the "fiscal agent of the United States,"3 at the expense of the United States. Fidelity files this Notice of Removal and hereby removes this matter from state court to the docket of this Honorable Court. Fidelity respectfully shows as follows:

1.    On or about September 14, 2012, Plaintiff, Jacqueline S. Robinson, filed a lawsuit in the Chancery Court for Sumner County at Gallatin, State of Tennessee, entitled *"Jacqueline S. Robinson v. Bank of America, et al"* bearing case number 2012-CV-185. Plaintiff sued Fidelity in its capacity as her flood insurer; The Newport Agency, her insurance agent ("Newport"); and

---

1 *See* 42 U.S.C. '4001 *et seq.*
2 44 C.F.R. '62.23(f).

1

Bank of America d/b/a Bank of America Home Loans ("BOA"), her mortgage lender. A true and correct copy of all pleadings filed in the record of the state court proceeding is attached hereto as **Exhibit A**.

2. For the reasons that follow, Fidelity hereby removes this case from state court to this federal court, pursuant to 42 U.S.C. §4072, 44 C.F.R. Pt. 61, App. A(1), Article IX, 28 U.S.C. §1331, 28 U.S.C. §1332, 28 U.S.C. §1337 and 28 U.S.C. §1367.

A. **REVIEW OF PLAINTIFFS' COMPLAINT**

3. In her Complaint, Plaintiff alleges the following, to wit:

- On or about July 20, 2006 Plaintiff purchased the property located at 1026 New Shackle Island, Hendersonville, Sumner County, Tennessee, the subject property. (Exhibit A, ¶ 7)

- Plaintiff made application with Newport to obtain both homeowners and flood insurance coverage for the subject property. (Exhibit A, ¶ 12)

- Newport obtained flood coverage for Plaintiff through Defendant Fidelity. (Exhibit A, ¶ 14)

- The initial flood insurance coverage was paid to Fidelity at the closing of the purchase of the subject property. (Exhibit A, ¶ 15)

- Plaintiff was required to maintain an escrow account with Countrywide/BOA for the payment of the flood insurance. (Exhibit A, ¶ 17)

- Plaintiff BOA (sic) paid the flood insurance premiums to Fidelity with funds from Plaintiff's escrow account, up to and including the annual premium for coverage from February 20, 2010 through February 20, 2011. (Exhibit A, ¶ 18)

- The flood policy BOA paid on Plaintiffs behalf to Fidelity in February of 2010, and prior years, was 41-7700572315-06. (Exhibit A, ¶ 19)

- The policy numbered 41-7700572315-06, issued by Fidelity insured the subject property against loss associated with a flood for $148,000.00 and had been in effect since at least 2006. (Exhibit A, ¶ 20)

---

3 42 U.S.C. '4071(a)(1); *Gowland v. Aetna Cas. & Surety Co.*, 143 F.3d 951, 953 (5th Cir. 1998).

- Fidelity accepted the flood insurance premium paid to it for policy number 41-7700572315-06 by BOA in 2010 and all years since 2006. (Exhibit A, ¶ 21)

- On or about May 1st and 2nd, 2010, the subject property was severely flooded and Plaintiff and her family were forced to evacuate the second story of the home via rescue boats. (Exhibit A, ¶ 22)

- Following the flood, Plaintiff filed a claim on the Flood policy number 41-7700572315- 06 she paid for, issued by Fidelity with Newport as the local agent. (Exhibit A, ¶ 23)

- On or about June 8, 2010, Plaintiff was advised by Newport, that Fidelity refused to pay the claim under the policy 41-7700572315-06 which Plaintiff had paid the premium for by BOA through her escrow account. (Exhibit A, ¶ 24)

- Fidelity did not provide a written denial of the claim to Plaintiff. (Exhibit A, ¶ 25)

- On or about May 14, 2010, after the claim filed by Plaintiff, Fidelity issued a backdated flood policy number 41-4400502938-00 for the policy period 07/20/07 to 07/20/08 purporting to be the flood insurance for the subject property. (Exhibit A, ¶ 26)

- The said policy numbered 41-4400502938-00 provided a loss benefit of only $8,000.00 for the building and $2300.00 for contents. (Exhibit A, ¶ 27)

- On or about May 17, 2010, after the claim filed by Plaintiff, Fidelity issued a backdated flood policy number 41-4400502938-01 for the policy period 07/20/08 to 07/20/09 purporting to be the flood insurance for the subject property. (Exhibit A, ¶ 28)

- The said policy numbered 41-4400502938-01 provided a loss benefit of only $7,200.00 for the building and $2,200.00 for contents. (Exhibit A, ¶ 29)

- On or about May 18, 2010, after the claim filed by Plaintiff, Fidelity issued a backdated flood policy number 41-4400502938-02 for the policy period 07/20/09 to 07/20/10 purporting to be, the flood insurance for the subject property. (Exhibit A, ¶ 30)

- The said policy numbered 41-4400502938-02 provided a loss benefit of only $19,200.00 for the building and $6,000.00 for contents. (Exhibit A, ¶ 31)

- All policies backdated by Fidelity are significantly less than the policy coverage paid for by Plaintiff as shown on the flood declarations page for policy number 41-7700572315- 06. (Exhibit A, ¶ 32)

- Plaintiff is entitled to the coverage and benefits for the premiums she paid to Fidelity under the policy number 41-7700572315-06. (Exhibit A, ¶ 33)

- For reasons unknown to Plaintiff, on or about October 2009, BOA obtained additional flood coverage for the building on the subject property in the amount of $83,500.00. (Exhibit A, ¶ 34)

- Defendant BOA charged Plaintiff for this additional flood protection. (Exhibit A, ¶ 35)

- Plaintiff's home was severely damaged as a result of the historic flood levels. (Exhibit A, ¶ 39)

- Fidelity refused to honor policy number 41-7700572315-06 and issued the aforementioned backdated policies. (Exhibit A, ¶ 40)

- Plaintiff is entitled to payment from Fidelity, Newport (sic) for the damage to her property as a result of the flood. (Exhibit A, ¶ 43)

- Plaintiff is entitled to reimbursement for her expenses from Fidelity under the flood insurance policy number 41-7700572315-06. (Exhibit A, ¶ 44)

- Plaintiff is entitled to reimbursement from BOA, through its flood policy, for damages to and expenses incurred to mitigate damage to the subject property. (Exhibit A, ¶ 45)

- Defendants Fidelity and/or Newport breached their duty to provide flood insurance as evidenced by the Flood Declarations page and represented to Plaintiff. (Exhibit A, ¶ 49)

- As a result of Defendant Fidelity and/or Newport's breach Plaintiff has suffered a loss of to her property, and did not receive the benefit of the coverage bargained for. (Exhibit A, ¶ 50)

- Defendant Fidelity and or Newport made misleading representations to Plaintiff regarding the coverages she would receive in exchange for the premiums she paid. (Exhibit A, ¶ 52)

- Defendant Fidelity and/or Newport knew or should have known, that the information they provided to Plaintiff and BOA in the form of a Flood Declarations Page regarding the flood coverage for the Property would be relied upon by Plaintiff and BOA. (Exhibit A, ¶ 53)

- Defendant Fidelity and/or Newport owed a duty to Plaintiff to not misrepresent

4

>   the actual flood coverage being provided to Plaintiffs property. (Exhibit A, ¶ 54)

- Plaintiff has suffered a tangible loss to her real property and funds expended to mitigate the damage to the subject property as a result of her reliance upon Defendant Fidelity and or Newport to indemnify her against the covered losses. (Exhibit A, ¶ 55)
- Plaintiff alleges additional causes of action under states law for misrepresentation by concealment, fraud, estoppel, unjust enrichment, and consumer protection. (Exhibit A, ¶¶ 56-85)

- In her Prayer for relief paragraph, Plaintiff requests an Order that Fidelity breached the flood insurance coverage outlined in policy 41-7700572315-06; that Plaintiff is entitled to the face amount of the flood coverage as shown in the flood declarations policy number 41-7700572315-06; and that Fidelity indemnify and make whole Plaintiff for her losses related to the flood damage; and that Plaintiff is entitled to judgment in her favor against Fidelity for the various state law causes of action. (Exhibit A, Prayer for Relief)

4. There is no question that the Plaintiff sued Fidelity as a result of the denial of her flood claim for damages that she made pursuant to the provisions of her National Flood Insurance Program Standard Flood Insurance Policy stemming from a flood incident that, according to Plaintiff, occurred on May 1 and 2, 2010. Plaintiff alleges seven separate causes of action in her suit against Fidelity for 1) breach of the flood insurance contract; 2) negligent misrepresentation/intentional misrepresentation; 3) misrepresentation by concealment; 4) fraud; 5) estoppel; 6) unjust enrichment; and 7) consumer protection, all of which seek payment of the face amount of the NFIP flood coverage as shown in the flood declarations policy number 41-7700572315-06 and an order that Fidelity indemnify and make whole Plaintiff for her losses related to the flood damage that allegedly occurred on May 1-2, 2010.

**B.  THE FEDERAL GOVERNMENT'S RULES AND THE WYO PROGRAM CARRIER'S ROLE**

5. Congress underwrites all operations of the NFIP through the U.S. Treasury. This includes appropriations for both the adjustment of claims and the payment of those claims. Similarly,

5

Congress has conferred "rule-making power upon the agency created for carrying out its policy," specifically the Federal Emergency Management Agency ("FEMA").

6. Fidelity, as a WYO Program carrier, is authorized to issue the Standard Flood Insurance Policy on behalf of the federal government pursuant to the "Arrangement" between itself and FEMA, set forth at 44 C.F.R. Pt. 62, App. A.

7. Fidelity cannot waive, alter or amend any of the provisions of the SFIP. See 44 C.F.R. §61.13(d) and 44 C.F.R. Pt. 61, App. A(1), Art. VII(D).

8. Further, Fidelity has no authority itself to tailor or alter NFIP policies backed by the government. 44 C.F.R. §62.23.

9. Fidelity's role, as a WYO Program carrier and as set forth in the Arrangement, is to market, sell, administer, and handle claims under SFIPs that it is authorized to issue on behalf of the federal government. It is clear that Fidelity, in its WYO capacity, is conducting all of these actions in its fiduciary capacity as the "fiscal agent" of the United States. 44 C.F.R. §62.23(f) and 42 U.S.C. §4071(a)(1).

10. All flood claim payments made by a WYO Program carrier, such as Fidelity, under an SFIP are made out of a segregated account containing U.S. Treasury funds, as required by 44 C.F.R. Pt. 62, App. A, Art. III (D)(1), (2) and (3). The Fifth Circuit has held that "payments made pursuant to that policy are 'a direct charge on the public treasury.'" *Gowland*, 143 F.3d at 955, citing to *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir.1987). The Eleventh Circuit analyzed what funds are at stake in the NFIP with regard to claims for interest and noted that "claim payments come out of FEMA's pocket regardless of how they are paid*.*" *Newton v. Capital Assur. Co., Inc.*, 245 F.3d 1306, 1311 (11th Cir. 2001), rehearing en banc denied, 263 F.3d 172 (11th Cir. 2001).

11. Effective October 1, 2004, there was a revised "Arrangement" between FEMA and all WYO Program carriers, including Fidelity. In that revised Arrangement, FEMA further clarified its regulations to make clear that, in addition to disputes arising from claims and claims handling, the policy sales and administration are performed by the WYO Program carriers (a) in their fiduciary capacity to the government, (b) utilizing federal funds, and (c) governed by extensive federal regulations.

12. Moreover, FEMA stated its view that "any" such litigation states a federal question. Each of these points is now clearly stated within the revised Arrangement, and in the following two paragraphs:

> Whereas, FIA has promulgated regulations and guidance implementing the Act and the Write-Your-Own Program whereby participating private insurance companies act in a fiduciary capacity utilizing federal funds to sell and administer the Standard Flood Insurance Policies, and has extensively regulated the participating companies' activities when selling or administering the Standard Flood Insurance Policies; and
>
> Whereas any litigation resulting from, related to, or arising from the Company=s compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder raise a federal question; and . . .

44 C.F.R. Pt. 62, App. A, Article I.

13. The NFIP, the SFIP, and the WYO Program carriers participating in the NFIP are all governed by federal law, not state law. *See West v. Harris*, 573 F.2d 873 (5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979). In *West*, 573 F.2d at 881, the court stated the following:

> "Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law."

C. **FEDERAL JURISDICTION**

7

### (1). 42 U.S.C. §4072 - Original Exclusive Jurisdiction

14. 42 U.S.C. §4072 conveys "original exclusive" jurisdiction over claims involving administration of and claims handling matters under the SFIP.

15. Plaintiff is aware of the requirement of filing in federal court as SFIP Article VII(R) clearly states that the insured "must file suit in the United States District Court of the district in which the covered property was located at the time of the loss." Certainly Fidelity is not suggesting that jurisdiction can be created by contract, but instead it is pointing out that Plaintiff was fully aware of the requirement of filing in federal court. Further, because the SFIP is a codified federal regulation, Plaintiff is charged with the knowledge of this requirement. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947).

### (2). 28 U.S.C. §1331 - Federal Question Jurisdiction

16. Fidelity asserts that the SFIP is a codified federal regulation found in its entirety at 44 C.F.R. Pt. 61, App. A(1) and is governed exclusively by federal laws and the NFIA. As per the terms of the SFIP, "this policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. §4001, et seq.), and federal common law." 44 C.F.R. Pt. 61, App. A(1), Article IX. Because the flood policy must be interpreted using federal common law, federal jurisdiction exists pursuant to 28 U.S.C.§1331.

17. In order to determine what, if any, U.S. Treasury benefits the Plaintiff may be entitled to receive, the Court will necessarily have to interpret the SFIP itself as well as the federal laws, regulations and statutes governing the SFIP. Regardless of the source of funding for Plaintiff's alleged actual damages, the Court would have to interpret the SFIP itself. Federal common law governs the interpretation of the SFIP, and "if the language of a policy is clear and unambiguous,

it should be accorded its natural meaning." *Hanover Building Materials v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984). As the SFIP is a federal law, necessarily the interpretation of the SFIP (and the federal laws governing the operation of the NFIP) to determine the coverage provided thereunder based upon rating and zone determinations, and any amounts due under the SFIP would require the interpretation of a federal law which presents a federal question.

18. The determination as to whether the Plaintiff's property was damaged by a flood and the coverage placed as defined by the Plaintiff's policy and any interpretation of the rules and regulations of the NFIP will require the Court to determine whether Fidelity, as a WYO carrier, followed the federal requirements under the NFIA and require the Court to review and interpret the applicable rules and regulations governing the Company's compliance with the written standards, procedures, and guidance issued by FEMA or FIA which will involve several substantial federal questions.

19. Thus, there is federal question jurisdiction under 28 U.S.C. §1331, and the case is therefore also removable pursuant to 28 U.S.C. §1441(a), (b) and (c).

20. Plaintiff's Petition clearly asserts that there was a valid enforceable NFIP flood insurance contract between Fidelity and Plaintiff. (Exhibit A, ¶ 12 & 14) Clearly, Plaintiff made a claim for flood damages and is seeking the enforcement of her NFIP SFIP contract, *i.e.*, breach of contract. (Exhibit A, ¶¶ 43, 44, 49, 50 & Prayer for Relief) As such, the payment that the Plaintiff seeks from Fidelity under the SFIP would be a "direct charge on the public treasury," and would be "binding" upon the federal government. *Gowland*, 143 F.3d at 955; and 44 C.F.R. Pt. 62, App. A, Art. II(F).

21. Pursuant to 28 U.S.C. §1331, and by operation of 28 U.S.C. §1441(a), (b) and ( c), Fidelity asserts that there are multiple federal questions presented within the Plaintiff's Petition

thereby making the action removable pursuant to 28 U.S.C. §1331.

### 3. Nothing Other Than Federal Funds Are At Stake

22. Fidelity is appearing in this litigation in its capacity as a WYO flood insurance carrier pursuant to the Arrangement between itself and FEMA. The question of whether Fidelity or the Government would pay any resulting judgment, whether under state or federal law, is determined by the text of the "Arrangement" between Fidelity and the Government. That Arrangement is found at 44 C.F.R. Pt. 62, App. A.

23. FEMA promulgated the "Arrangement" based upon its congressionally authorized responsibilities. Article I of the Arrangement, states the following:

> Article I - Findings, Purpose, and Authority
>
> Whereas, FIA has promulgated regulations and guidance implementing the Act and the Write-Your-Own Program whereby participating private insurance companies act in a fiduciary capacity utilizing Federal funds to sell and administer the Standard Flood Insurance Policies, and has extensively regulated the participating companies' activities when selling or administering the Standard Flood Insurance Policies; and
>
> Whereas, any litigation resulting from, related to, or arising from the Company's compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder raise a federal question.

24. These two paragraphs expressly explain two things: First, FEMA is communicating that "federal funds" are indeed utilized to both "sell and administer" NFIP policies by the WYO Program carriers; second, all litigation arising from these operations, in FEMA's view, states a federal question.

25. Now turning to Article III(D)of the Arrangement, it is clear that <u>all</u> loss payments under policies are to be paid for under the Arrangement. While Article III(D)(1) concerns loss payments under policies, Article III(D)(2) separately governs "payments as a result of litigation

that arises under the scope of this Arrangement." Obviously, in an operation this complex, there will be litigation arising from the innumerable activities regarding policy issuance and policy administration. Just as obviously, policy issuance and administration activities come within the scope of the Arrangement, for in Article II they are <u>expressly made part of the scope of the Arrangement</u>. Article III(D)(2) confirms expressly that judgments emanating from lawsuits (such as the one at bar) will be paid for by the Government under the Arrangement.

26.     In addition the U.S. Fifth Circuit has recognized that extra-contractual claims against a WYO would be paid by FEMA stating: "As the regulations do not define the type of conduct that falls significantly outside the scope of the arrangement, the ultimate decision whether Allstate will be reimbursed rests with FEMA." *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 n.9 (5th Cir. 2007).

27.     At this juncture, this Court is asked to examine a declaration from FEMA's Director of Claims from 1999 that has been filed in dozens of prior NFIP cases and which includes a specific declaration from FEMA that FEMA does pay judgments emanating from exactly the allegations that are pending at bar. In FEMA's declaration from 1999 in *Cohen v. State Farm Fire & Cas. Co.*, 68 F.Supp.2d 1151 (C.D. Cal. 1999). (Exhibit B)4, at paragraph 6 of that declaration, FEMA states unequivocally that "the situation where a company is alleged to have misrepresented coverage or some other policy provision will be included in the scope of the Arrangement." "Misrepresented coverage" is precisely what the Plaintiff alleges. She alleges, based upon her erroneous argument of imputed fault to the carrier of what the agent supposedly

---

4 Judge Maty declined to consider that declaration in *Cohen*, but did take it up in a subsequent matter, Shery v. South Carolina

11

said or did that Fidelity misrepresented the scope of coverage.5 FEMA has always believed that it must defend its companies vigorously upon this point, so as to block these types of tactics.6

28. In the matter at bar, the Plaintiff's claims arise exclusively from her allegations seeking damages arising from the issuance of her flood policy and the denial of her flood claim.

29. The Plaintiff has not alleged and cannot later argue that Fidelity's actions are significantly outside the scope of the *Arrangement*, thus, the logical conclusion is that federal funds are at risk. More fundamentally, there is no indication or allegation that the FEMA OGC has determined that Fidelity's actions in this matter are outside the scope of the Arrangement such that Fidelity would bear the burden of a damage award in this case. Thus, clearly, federal funds *are* at risk, Plaintiff's claims raise a federal question, and therefore removal of this matter to the United States District Court for the Middle District of Tennessee is proper.

### 4. Legal Presumption Under *Grissom* that Federal Funds at Stake

30. Defendant, Fidelity, respectfully apprises this Honorable Court of a decision of the United States Fifth Circuit Court of Appeal announced April 23, 2012, in *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d. 397 (5th Cir. 2012). Under *Grissom*, it is now established Fifth Circuit precedent and legally presumed that the claims in this case are being litigated at the full expense and exposure of the United States Treasury, regardless of whether they are preempted or not.

### D. FEDERAL JURISDICTION ALSO EXISTS BECAUSE THE PETITION BRINGS INTO PLAY AN ACT OF CONGRESS REGULATING COMMERCE

31. Removal of this case is also proper under 28 U.S.C. §1337, which provides that the

---

5 No direct communications between Fidelity and the Plaintiff are alleged.
6 FEMA=s regulation found at 44 C.F.R. Pt. 61.5(e) is to the same effect, and both mirror the Supreme Court=s bar on all detrimental reliance claims in federal insurance program cases found at *Merrill, supra*, and in *Heckler*.

12

district court shall have original jurisdiction of any civil action or proceeding arising under any act of Congress regulating commerce. Just like §1442, §1337 is not subject to the well-pleaded-complaint rule. Under §1337, removal is proper where the facts alleged in the Plaintiff's petition bring into play an act of Congress that regulates commerce, regardless of whether any reference to the said act appears in the Plaintiff's pleading. *Uncle Ben's International Division of Uncle Ben's Inc. v. Hapag-Lloyd Aktiengesellschaft,* 855 F.2d 215, 216-17 (5th Cir. 1988); *Crispin Co., v. Lykes Bros. Steamship Co.,* 134 F.Supp.704, 706 (S.D.Tex. 1955); and *Commonwealth of Puerto Rico v. Sea-Land Service Inc.,* 349 F.Supp.964, 973-74 (D.P.R. 1970).

32.     Clearly, under the National Flood Insurance Act, 42 U.S.C. §4001, *et seq.*, Congress is regulating commerce by promulgating the complex and comprehensive statutory scheme that is commonly described as the National Flood Insurance Act. As recognized in *C.E.R. 1988, Inc. v. Aetna Casualty and Surety Co.,* 386 F.3d 263 (3rd Cir. 2004):

> FN3. The insurance industry in the United States operates in interstate commerce. States may regulate the insurance industry only to the extent Congress permits. U.S. Const. art. I, § 8, cl. 3. The McCarren-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, grants states this power except where Congress enacts legislation that "specifically relates to the business of insurance." 15 U.S.C. §1012 (b). In *Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 116 S.Ct 1103, 134 L.Ed.2d 237 (1996), the Supreme Court held that the exception for acts relating to the business of insurance should be construed broadly, noting that "[t]he word 'relates' is highly general." *Id.* at 38, 116 S.Ct. 1103. Without doubt the NFIA is congressionally-enacted legislation relating to the business of insurance. *Id.* at FN 3

33.     Beyond the general proposition that the National Flood Insurance Act regulates commerce, it is also clear that in a more particularized sense, the Act expressly regulates both the subjects of claims and claims handling, as well as "the conditions of insurability." See, e.g., 42 U.S.C. §§4013 and 4019. Plainly, federal laws affecting commerce are involved in the facts put

13

at issue in the Plaintiff's Petition, and so removal of that Petition is proper pursuant to 28 U.S.C. §1337.

E. **THERE IS SUPPLEMENTAL JURISDICTION OVER ANY STATE LAW CLAIMS**

34. To the extent that any of the claims of the Plaintiff are not subject to federal jurisdiction, this Court has jurisdiction over all such claims under 28 U.S.C. §1367, which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367. *See Exxon Mobile Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611, 2620 (2005).

35. All of the claims put at issue in the Plaintiff's Petition arise from the damages that she allegedly sustained as a result of the issuance of a flood policy and from her efforts to obtain flood insurance benefits as a result of a loss on May 1-2, 2010. As such, all of the Plaintiff's legal claims arise from the same nucleus of operative fact, that being the underlying flood loss claim, and all of the insurance issues arising therefrom. Traditionally, federal courts have exercised supplemental jurisdiction over all such claims in cases of this type. *See, e.g., Jamal v. Travelers Lloyds of Texas Ins. Co.*, 97 F.Supp.2d 800, 805 (S.D.Tx. 2000).

F. **SEPARATE AND INDEPENDENT FEDERAL CLAIM**

36. Plaintiff's claims against Fidelity under the SFIP involve an obligation distinct and separate from the claims made against the co-Defendants. More particularly:

    a. The issuance of an SFIP is governed by federal law and flood claims are paid with U.S. Treasury funds;

    b. The interpretation of an SFIP insurance policy to determine coverage is the

interpretation of a codified federal regulation found at 44 C.F.R. Pt. 61, App. A(1);

 c. Plaintiff's claims as to how Fidelity issued, administered, and breached the SFIP at paragraphs 14, 20-33, 40, 43, and 48-85 of Plaintiff's Petition are independent of Plaintiff's claims against the co-Defendants. As such, Plaintiff's claims as to Fidelity can only be removed by the WYO Program carrier Fidelity.

37. Removal of such claims is allowed pursuant to 28 U.S.C. 1331, which provides in pertinent part:

> (c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion may remand all matters in which state law predominates.

38. Thus, regardless of the other claims against the Co-Defendants, if this Court finds one federal claim that is separate and independent as to Fidelity, then this Court has jurisdiction and this removal is proper.

## F.   PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN MET

39. Fidelity notes that its first knowledge or notice of the suit was on or about October 15, 2012, a copy of which is attached hereto as part of Exhibit A.

40. For the reasons discussed above and herein, Plaintiff's claims for payment of damages under an existing SFIP issued by Fidelity raise federal questions that are separate and independent from all other claims made in this lawsuit. Therefore, consent to removal of all co-Defendants is not required under 28 U.S.C. §1441 ( c). *See Henry v. Independent American Savings Assoc.*, 857 F.2d 995, 999 (5th Cir. 1998).

41. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as the property and the majority of the transactions at issue occurred within the jurisdictional territory of this Court.

42. Pursuant to 28 U.S.C. §1446(a), attached hereto as Exhibit A is a copy of all processes, pleadings, and orders served on Fidelity to date.

## CONCLUSION

WHEREFORE, Defendant, Fidelity National Property & Casualty Insurance Company, prays that this Notice of Removal will be deemed good and sufficient, and that this matter will be accepted onto this Court's docket.

This 13th day of November 2012.

Respectfully submitted,

**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

By: _____
Steven M. Jacoway, BPR #012129
(admission pending pro hac vice)
Attorney for Fidelity National Property & Casualty Insurance Company
537 Market Street, Suite 202
Chattanooga, TN 37402
(423) 756-7117; (423) 267-5032 facsimile

**Of counsel:**
**NIELSEN LAW FIRM, L.L.C.**
Keith Detweiler, Esq.
(admission pending pro hac vice)
Attorney for Fidelity National Property & Casualty Insurance Company
3838 N. Causeway Boulevard, Suite 2850
Metairie, Louisiana 70002
(504) 837-2500
(504) 832-9165 facsimile

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing has been served via Hand Delivery or First Class Mail, with sufficient postage affixed thereon to insure proper delivery, upon:

>J. Trent Lehman, Esq.
>Lehman & Lehman
>1646 Westgate Circle Suite 102
>Brentwood, TN 37027
>
>Bank of America N. A. d/b/a
>Bank of America Home Loans
>5701 Horatio Street
>Utica, NY 13502-1024
>
>Terry Newport
>The Newport Agency
>1511 Memorial Boulevard
>Murfreesboro, TN 37129

This ___14___ day of November 2012.

**Patrick, Beard, Schulman & Jacoway, P. C.**

By: _____

F:\WpDocs\CLIENT\F\Fidelity National\Robinson v\notice of removal-federal.doc